## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARY LOGAN,<br><br>                           Plaintiff,<br><br>v.<br><br>MERRIMAC PAPER CO., INC. LEVERAGED EMPLOYEES' STOCK OWNERSHIP PLAN AND TRUST, AND GERARD J. GRIFFIN, JR., BREWSTER STETSON, JAMES MORIARTY AND JOHN T. LEAHY, as they are or were Administrators and/or Trustees of the Merrimac Paper Co., Inc. Leveraged Employee Stock Ownership Plan,<br><br>                        Defendants. | Civil Action No.: 03-CV-12351-RGS |

## MEMORANDUM OF LAW OF DEFENDANTS BREWSTER STETSON, JAMES MORIARTY, GERARD GRIFFIN AND JOHN LEAHY IN SUPPORT OF THEIR MOTIONS TO DISMISS THE PLAINTIFF'S COMPLAINT

Defendants Brewster Stetson ("Stetson"), James Moriarty ("Moriarty"), Gerard Griffin ("Griffin") and John Leahy ("Leahy") (collectively "individual defendants") submit this memorandum in support of their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

---

[1] In this memorandum, the individual defendants make reference to facts alleged in the Complaint, as well as to documents attached by Plaintiff as exhibits to the Complaint or relied on by Plaintiff in her Complaint. Reliance by the individual defendants on documents attached to or referenced in the Complaint is proper and does not convert the motion to a motion for summary judgment pursuant to Rule 56. Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001). Further, documents are not outside a complaint "when . . . a complainant's factual allegations are expressly linked – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Edwin v. Blenwood Assoc., Inc., 9 F. Supp. 2d 70, 72 (D. Mass. 1998) (quoting Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

## INTRODUCTION

Plaintiff Mary Logan ("Logan") brings this action against the Merrimac Paper Company, Inc. Leveraged Employee Stock Ownership Plan and Trust ("ESOP"), and alleged former, individual Trustees or Administrators of the ESOP. Plaintiff's four count complaint asserts claims against the Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), based upon allegations that the Defendants denied Plaintiff benefits under the ESOP and breached their fiduciary duties under the ESOP and that Defendant Griffin failed to provide ESOP plan documents to Plaintiff. In essence, Plaintiff seeks allegedly overdue payments based on a promissory note issued by her former employer, Merrimac Paper Company, Inc. ("MPC") in connection with her sale to MPC of shares distributed to her from the ESOP. Plaintiff asserts her actions based upon the ERISA causes of action enumerated at 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2) and 1132(a)(3).

The individual defendants each move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7) on five separate grounds, each of which is discussed in detail below. First, as a threshold matter, Plaintiff lacks standing to bring her claims under the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. ("ERISA"), specifically, the exclusive causes of action under 29 U.S.C § 1132(a).

Each of Plaintiff's claims is predicated and dependent upon her allegation that she was and continued to be a "participant" in the ESOP. In relevant part, Plaintiff must be a "participant" under 29 U.S.C § 1132(a)(1)(B), (a)(2) and (a)(3) to bring these actions. As a matter of well-established law, however, because she received a complete distribution of her interest in the ESOP, she is not a "participant" and therefore lacks standing under 29 U.S.C. § 1132(a). Second, Plaintiff's vague and conclusory allegations concerning the alleged misdeeds of the individual defendants are legally insufficient to sustain Plaintiff's claims against them.

Third, Plaintiff's allegations and the relief sought by her under 29 U.S.C. § 1132(a)(1)(B), § 1132(a)(2), and § 1132(a)(3) do not fit within the claims cognizable or the relief available under those provisions. Finally, to the extent that the individual defendants owed a fiduciary duty to Plaintiff, the allegations of the Complaint fail to state a claim that they breached any such duty.

## FACTUAL BACKGROUND

### I.    TERMS OF ESOP

As part of their employment, Plaintiff participated in the ESOP. Complaint, ¶ 15. The ESOP is an employee stock ownership plan under ERISA. Complaint, ¶ 14.

The ESOP was first effective as of January 1, 1985.[2] Plan, Introduction, p. 1. The ESOP explicitly provides:

> The primary purpose of the Plan is to enable participants to acquire stock ownership interest in the Company, therefore, the Trust under the Plan is designed to invest primarily in the Common Stock of the Employer. . . . The ESOP Plan is designed to be available as a technique of corporate finance for the Company. As such it may be used to meet the general financing requirements of the Company, including capital growth and transfers in the ownership of Company Stock. . . .

Id.

Each participant in the ESOP has an individual account under the ESOP trust. Plan, Section 7.01. The account holds the company shares that have been allocated to it and other assets. Plan, Section 1.01(a). The Committee, the Company and the Trustees are the fiduciaries of the ESOP. Plan, Section 11.01. The Committee has sole responsibility for the administration of the ESOP. Id. The Trustees are responsible "for the administration of the Trust" holding the assets of the ESOP. Id. Section 12.06 of the Plan provides that: "[t]he Trustee shall make distributions to Participants and their Beneficiaries in accordance with the written instructions of the Committee . . . and the Trustee shall have no other responsibility with respect to such

---

[2] The ESOP document (the "Plan") is attached as Exhibit A to the Complaint.

distributions." The Plan states that "each of the foregoing Fiduciaries shall be responsible for the proper exercise of its own powers, duties, responsibilities and obligations under the Plan and, except as otherwise required by applicable law, shall not be responsible for any act or failure to act by another Fiduciary." Plan, Section 11.01.

Section 10.01 of the Plan provides that "[a]ll benefits [from the ESOP] shall be distributed either in whole shares of Company Stock or cash or in a combination thereof. . ." Plan, Section 10.01. Distribution will occur upon, *inter alia*, a participant's termination of employment. Plan, Section 10.02(a)(iv). "[F]or a period of 15 months following the date of any distribution, [participants] have the right to sell all or a portion of such shares to the Company (the 'Put')." Plan, Section 10.04(a). MPC may elect to pay in installments for the distributed shares put to it. Plan, Section 10.04(b). The ESOP may, at the election of the Committee, pick up a put from the Company, but nothing under the terms of the ESOP obligates the ESOP to accept a put on a mandatory basis. Plan, Section 10.04(a).

## II.    PLAINTIFF LOGAN

Plaintiff Logan separated from service with MPC in December 2000. Complaint, ¶ 26. On December 30. 2000, Plaintiff alleges her individual account under the ESOP held 344 shares of Company stock and cash of $10,130.71. Id., ¶ 28. Plaintiff Logan then caused the balance in her account, both shares and cash, to be transferred in a roll-over distribution to an individual retirement account under § 408 of the Internal Revenue Code ("IRA") established for her benefit ("FBO Mary K. Logan") at Fidelity Management Trust Company ("Fidelity"). Id., ¶ 31; Promissory Note, attached hereto as "Exhibit A."[3] The account at Fidelity is completely separate from the ESOP trust. Id. Plaintiff then elected to "put" the distributed shares held in the Fidelity

---

[3] The Promissory Note, although not attached, was incorporated by reference in paragraphs 36-47 of the Complaint. See also footnote 1, above.

account back to MPC. Id., ¶¶ 32, 33.[4]  In December 2000, Fidelity, as trustee of the IRA, sold

the distributed shares to MPC, and in return, Fidelity received a Promissory Note from MPC,

dated December 29, 2000, obligating MPC to pay Fidelity $629,500.00 in five annual

installments with interest at 8.5% per annum.  Id., ¶¶ 34-36; Exhibit A, attached hereto.

Allegedly, no payments have been made to date.  Complaint, ¶ ¶ 42, 45.

## III.   DEFENDANTS STETSON, GRIFFIN, MORIARTY AND LEAHY AND MPC

Plaintiff alleges that from around August 2002 to the present, Defendant Leahy is the sole

ESOP Trustee and ESOP Committee member.  Complaint, ¶ 24.  Plaintiff also alleges that from

January 1, 2002 to August 2002, Defendant Griffin was the sole ESOP Trustee and ESOP

Committee member.  Id., ¶ 23.  Plaintiff then alleges that from January 1, 2001 to December 31,

2001, Defendants Griffin and Stetson together served as the exclusive trustees and Committee

members of the ESOP.  Id., ¶ 22.  Finally, Plaintiff alleges that from  April 1998 to December

30, 2000, Defendants Moriarty, Griffin and Stetson served as Trustees and Committee members

of the ESOP.[5]  Id., ¶ 21.

Plaintiff also alleges that MPC is a duly organized Delaware corporation that is the

subject of a pending Chapter 11 proceeding in the U.S. Bankruptcy Court District of

Massachusetts (Western Division).  Id., ¶ 9.  Plaintiff explains that MPC is not named as a

defendant because it is a subject of a confirmed plan of reorganization in the Chapter 11

proceeding and any claims by Plaintiff against MPC are subject to the terms of the plan of

reorganization.  Id.

---

[4] While Plaintiff alleges in her Complaint that the "put" option was made to the ESOP, it is indisputable that the put was in fact made to MPC. The promissory note on which Plaintiff relies for her claims and which is now attached to this motion at Exhibit A clearly explains that Plaintiff sold her shares to MPC and received the promissory note in return.  As such, the promissory note speaks for itself and Plaintiff's contention is inaccurate on its face.
[5] For the purpose of this Motion to Dismiss, Defendants will assume Plaintiff's allegations in her Complaint are true, except as stated in footnote 3.

## IV.   PROCEDURAL HISTORY

Plaintiff filed a Complaint in this Court in December 2003.  No responsive pleading has been filed to date by Defendants Stetson, Griffin, Moriarty or Leahy.  Defendants Stetson, Griffin, Moriarty and Leahy have now moved to dismiss Plaintiff's Complaint on the grounds stated above. [6]

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL BECAUSE PLAINTIFF LACKS STANDING TO ASSERT CLAIMS UNDER ERISA

Pursuant to Fed. Civ. P. 12(b)(1), Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing to assert claims under ERISA.  In reviewing a motion under Rule 12(b)(1), the court is "mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy v. United States of America, 45 F.3d 520, 522 (1st Cir. 1995), cert. denied, 515 U.S. 1144, 115 S. Ct 2581 (1995) (citations omitted).  "A plaintiff . . . . may not rest merely on 'unsupported conclusions or interpretations of law.' 'Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts' will not defeat a motion to dismiss."  Id. (citations omitted); see also  Flynn v. Ballinger, 1994 U.S. Dist. LEXIS 19689, at *3-4 (N.D. CA 1994)[7] aff'd 1996 U.S. App. LEXIS 1664 (9th Cir. 1996) (in reviewing a motion under 12(b)(1) "the court is not limited to the pleadings, and may properly consider extrinsic evidence.  The plaintiff bears the burden of establishing subject matter jurisdiction, and the court presumes lack of jurisdiction until the plaintiff proves otherwise.").

---

[6] The individual defendants move to dismiss Counts I, II and III from Plaintiff's Complaint as those counts are directed at all of the individual defendants.  Count IV is directed at Defendant Griffin who is separately moving to dismiss that count.
[7] For the Court's convenience, true and accurate copies of decisions not cited in the Federal Reporter are attached hereto at Exhibit B.

Standing is a necessary element of federal-court jurisdiction. Crawford v. Lamantia, 34 F.3d 28, 33 (1st Cir. 1994), cert. denied, 514 U.S. 1032, 115 S. Ct. 1393 (1995); Flynn, 1994 U.S. Dist. LEXIS 19689, at *4. Under ERISA, Plaintiff may pursue her claim only if she is a participant, beneficiary, or fiduciary of the ESOP. 29 U.S.C. § 1132(a)(1)(B); § 1132(a)(2); §1132(a)(3). To maintain the present action, Plaintiff must have standing at the time the action was brought, and must retain that status throughout the pendency of the lawsuit. See Nahigian v. Leonard, 233 F. Supp. 2d 151, 165 (D.Mass. 2002). Because Plaintiff was not a participant, beneficiary, or fiduciary at the time that this action was brought, Plaintiff lacks standing to bring this action under ERISA.

Plaintiff claims that she "has been and is a vested participant in the ESOP."[8]  Complaint, ¶ 15. ERISA defines a "participant" as an

> employee or a former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The United States Supreme Court has interpreted this definition to include "employees in or reasonably expected to be in, currently covered employment," and/or former employees who have "a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117, 109 S. Ct. 948, 958 (1989) (citations omitted). Plaintiff admits that she no longer was an

---

[8] An ESOP is an individual account plan that "is designed to invest primarily in qualifying employer securities." 29 U.S.C..§ 1107(d)(6). Thus, unlike the traditional pension plan governed by ERISA, ESOP assets generally are invested "in securities issued by [the plan's] sponsoring company." Donovan v. Cunningham, 716 F.2d 1455, 1458 (5th Cir.1983), cert. denied, 467 U.S. 1251 , 104 S.Ct. 3533 , 82 L.Ed.2d 839 (1984). The provisions of ERISA do not require the ESOP to maintain cash reserves sufficient to liquidate its own stock holding; indeed, 29 U.S.C. § 1104(a)(2) exempts the fiduciaries of an ESOP from the asset diversification requirements of 29 U.S.C. § 1104(a)(1)(C) and the prudence requirement of 29 U.S.C. § 1104(a)(1)(B) to the extent it may require diversification. Indeed, by its very nature "an ESOP places employee retirement assets at much greater risk than does the typical diversified ERISA plan." Martin v. Feilen, 965 F.2d 660, 664 (8th Cir.1992) (citing 29 U.S.C. § 1106(b)(1) ), cert. denied, 506 U.S. 1054 , 113 S.Ct. 979 , 122 L.Ed.2d 133 (1993).

employee with MPC as of December 2000. Complaint, ¶ 26. As such, Plaintiff was not a current employee when she initiated this action in December 2003. Moreover, as a former employee, Plaintiff does not contend that she has a reasonable expectation of returning to covered employment and, therefore, must rely on the argument that she has a colorable claim to vested benefits as a former employee. Under the definition presented by the Court in Firestone, Plaintiff is not a "participant," and thus does not have stanidng to bring this action under ERISA.

Plaintiff, however, has no claim to vested benefits under the ESOP, because she has received a complete distribution of her vested account balances under the ESOP. Every share of Company stock and every dollar of cash in Plaintiff Logan's account was, at her express direction, completely distributed out of the account and transferred to the IRA at Fidelity. When, as here, a former employee has received full distribution of her vested benefits, the former employee lacks standing to bring an action for breach of a fiduciary duty under ERISA. Crawford, 34 F.3d at 33.

Plaintiff's real claim here is not for a distribution of benefits under the ESOP, but rather that MPC has defaulted on the notes it issued to Fidelity as payment for the shares previously distributed from the ESOP. There is nothing further for Plaintiff to ask from the ESOP or its fiduciaries; the quarrel concerns strictly MPC's default on its note to Fidelity. Chief Judge Young recently recognized this very distinction. Laurenzano v. Blue Cross & Blue Shield of Mass. Retirement Income Trust, 134 F. Supp. 2d 189, 193-194 (D.Mass. 2001) (in determining whether the plaintiff had standing, the Court distinguished a claim for recalculation of lump sum benefit from one for damages).

In a case similar to the one at bar, the plaintiffs resigned from the Company and, in accordance with the ESOP, received the Company stock which previously had been credited to

their respective ESOP accounts. Flynn, 1994 U.S. Dist. LEXIS 19689, at *2-3. The plaintiffs then attempted to exercise their put option to the Company, but the Company refused to buy the stock. Id. The plaintiffs then brought an action against the plan fiduciaries. Id. The Court dismissed the case under Rule 12(b)(1), finding that the plaintiffs lacked standing because they were no longer participants of the plan. Id. at *8. The Court's holding that the plaintiffs were not participants was based upon the fact that, like the plaintiffs in this case, their vested benefits had already been distributed in a lump sum. Id. at *5.

Finally, the U.S. Department of Labor regulations that define the term "participant" under ERISA and that apply to 29 U.S.C. § 1132 state in relevant part:

> An individual is not a participant covered under an employee
> pension plan or a beneficiary receiving benefits under an employee
> pension plan if—
> (B) The individual has received from the plan a lump-sum
> distribution or a series of distributions of cash or other property
> which represents the balance of his or her credit under the plan.

29 CFR § 2510.3-3(d)(2)(ii)(B). Under these regulations, Plaintiff is neither a "participant" nor "beneficiary" in the ESOP because she received a complete distribution of her balance in the ESOP. Under the Supreme Court's holding in United States v. Mead Corp., 533 U.S. 218, 229-230, 121 S. Ct. 2164, 2172-2173 (2001), these final regulations are entitled to judicial deference. Additionally, these regulations are consistent with the standard set out in Firestone.

Here, Plaintiff Logan received a full distribution of her ESOP benefits, had the complete contents of her account transferred to a separate IRA at Fidelity in a roll-over distribution and then sold the distributed shares to MPC. Exhibit A; Complaint, ¶ 39. Because Plaintiff received from the ESOP her entire benefit entitlement under the Plan in a lump sum distribution, she was no longer a participant of the Pan. 29 CFR § 2510.3-3(d)(2)(ii)(B).

The First Circuit's narrow exception to the above rule, stated in <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697 (1st Cir. 1994), does not operate here. In <u>Vartanian</u>, the plaintiff left covered employment and took a lump sum distribution from the plan because the plan fiduciaries, in response to specific inquiries, affirmatively misrepresenting the probability of a rich early retirement program. <u>Id.</u> at 699. <u>Vartanian</u>, when read together with <u>Crawford</u>, stands for the narrow proposition that a former participant may retain standing only where the loss of standing is due to elected withdrawal from the plan which was prompted by the fiduciary's misrepresentations. <u>Nahigian</u>, 233 F. Supp. 2d at 167. The <u>Vartanian</u> exception does not apply here because (i) the ESOP fiduciaries did not mislead the Plaintiff as to the benefits the ESOP provides or would provide at any time and (ii) the ESOP fiduciaries did not in any way cause the Plaintiff to lose "participant" status through a misfeasance. Plaintiff does not allege that any act by the individual defendants prevented Plaintiff from receiving distribution of her complete benefit nor does she allege that these individual defendants manipulated the situation to defeat a future benefit entitlement.

Plaintiff's Complaint, therefore, should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiff lacks standing to assert claims under ERISA.

## II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS UNDER ERISA

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's Complaint should be dismissed for failure to state a claim against Defendants Stetson, Griffin, Moriarty and Leahy.

### A.    Plaintiff's Complaint Should Be Dismissed Because Plaintiff Fails To Allege Sufficient Facts To Support Her Allegations.

This Court should dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff has alleged insufficient facts to support her legal claims. It is well settled that in evaluating a motion to dismiss for failure to state a claim, "[courts] require more than

conclusions or subjective characterizations. [They] have insisted on at least the allegation of a minimal factual setting. It is not enough to allege a general scenario which could be dominated by unpleaded facts . . . " Dewey v. University of New Hampshire, 694 F. 2d 1, 3 (1st Cir. 1982) upholding dismissal of plaintiff's complaint alleging discharge for protected speech because allegations lacked factual basis), cert. denied, 461 U.S. 944, 103 S. Ct. 2121 (1983); Dartmouth Review v. Dartmouth College, 889 F. 2d 13, 16 (1st Cir. 1989) (dismissal affirmed where plaintiffs provided no factual averment to support their claim that the university treated her differently because of their race); Hogan v. Eastern Enterprises/Boston Gas, 165 F. Supp. 2d 55, 57 (D. Mass. 2001) (dismissing complaint including claims under ERISA).

In Hogan, the Court explained that under the Rule 12(b)(6) standard, "bald assertions, . . . subjective characterizations, optimistic predictions, or problematic suppositions" need not be credited. Hogan, 165 F. Supp. 2d at 57; see also Dewey, 694 F. 2d at 3 ("we insist that the claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why"); Aulson v. Blanchard, 83 F. 3d 1, 3 (1st Cir. 1997) ("[the 12(b)(6) standard] does not force an appellate court to swallow the plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited").

Here, Plaintiff falls far short of the standard required because she does not present facts to support the broad and conclusory allegations against the individual defendants. Plaintiff has alleged no facts to support her allegation that the individual Defendants: 'violat[ed] the terms of the ESOP," "fail[ed] to discharge their duties with respect to the ESOP for the exclusive purpose of providing benefits to participants, including Logan," and "fail[ed] to discharge their duties with respect to the ESOP solely in the interest of the ESOP participants, including Logan." Complaint, ¶ 64. These are nothing more than bald allegations, unsupported by any facts alleged in the Complaint.

11

As a matter of law, therefore, Plaintiff has not alleged sufficient facts to establish a violation of law.[9]

**B.    Plaintiff's Complaint Fails To State a Claim Against The Individual Defendants As She Did Not Allege Sufficient Facts To Establish A Breach Of Any Duty Owed to Plaintiff.**

As trustees and Committee members of the ESOP, Defendants Stetson, Griffin, Moriarty and Leahy met their obligations, including their obligations to Plaintiff.  Under Section 10.01 of the ESOP, all benefits were to be distributed either in whole shares of Company stock or cash or in a combination thereof.  In addition, these benefits would be distributed at the occurrence of various events, including upon the termination of employment of a participant.  Therefore, under Section 10.01, the obligation of the Trustees and/or the Committee members was to make the distribution to a participant at the occurrence of a certain event.

Here, Plaintiff received her distribution.  As such, the Trustees and/or the Committee members met their obligations to Plaintiff.  To the extent that Plaintiff's trustee, Fidelity, at Plaintiff's direction, subsequently exercised the put option and agreed to the terms of promissory notes, the put transaction, both in fact and under the terms of the ESOP, was a transaction solely between the Company and Plaintiff's trustee.  Neither the Trustees nor the Committee members were parties to the negotiation of the sale, the terms of the sale or of the notes, nor had any role or responsibility with respect to the sale under the terms of the ESOP.  As a result, the individual defendants met their obligations under the ESOP.

Plaintiff's allegations that "adequate security" was not provided as required under the terms of the ESOP are also unavailing because the requirement for security is placed upon the issuer of the note: MPC.  Any failure to provide adequate security occurred after the distribution from the ESOP took place ; i.e., after they had manifestly ceased to be plan assets to which any

---

[9] To the extent that Plaintiff's allegations against the individual Defendants can be interpreted as claims of fraud, Plaintiff must meet an even heightened pleading requirement which she has clearly failed to do.  See Doyle v.

fiduciary duty under ERISA attached.  Additionally, the promissory notes provided to Plaintiff met the "adequate security" obligation. S. Rep. No. 95-1263, at 87 (1978) ("As security for the installment purchase [under the put option] the seller must at least be given a promissory note. . . ."). As a result, because Plaintiff received a promissory note, there is no breach by any Defendant of a duty to provide adequate security.

**C.    Count I of Plaintiff's Complaint Fails To State a Cognizable Claim Under § 1132(a)(1)(B).**

Plaintiff brings Count I of her Complaint under 29 U.S.C. § 1132(a)(1)(B). That section states: "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Here, under the allegations of the Complaint, Plaintiff elected to receive and, in fact, received full distributions of her ESOP account when her employment ended with MPC and she had  the complete contents of her account transferred to an IRA.  By definition, these distributions were the only benefits that Plaintiff was entitled to under the terms of the ESOP. As such, Plaintiff cannot bring an action under section 1132(a)(1)(B) with respect to Defendants Stetson, Griffin, Moriarty and Leahy and the ESOP itself because she received everything that these individual defendants and the ESOP were permitted to provide her under the terms of the Plan.

After receiving her distribution, Plaintiff chose to have her IRA trustee sell all of the shares in the IRA to MPC. The essence of her current claim is purely that MPC defaulted on its notes to her IRA trustee and not for receipt of the account held under the ESOP, that is, a claim for default of the promissory note and not a breach of the ESOP. As these claims are clearly

Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

brought under the terms of a promissory note and not the ESOP or plan, these claims do not fall within the cause of action set out at Section 1132(a)(1)(B).

Even if Count I of Plaintiff's Complaint could somehow be construed as a claim under Section 1132(a)(1)(B), this claim fails against the individual Defendants because it lies only against MPC, the obligor under the note. As Trustees and/or Committee members, the duties of Defendants Stetson, Griffin, Moriarty and Leahy under the terms of the ESOP only extended to the administration of the ESOP and its assets. Plan, Sections 11.01(a)(i);d (ii); 11.02(b). Their duties did not extend to the disposition of distributions which are assets that, by definition, have left the ESOP and its trust and are no longer subject to ERISA's protections. See e.g. Robbins v. DeBuono, 218 F.3d 197, 203-204 (2nd Cir. 2000) cert. denied, 531 U.S. 1071, 1215 S. Ct. 760 (2001). Plaintiff received her distribution as required under the ESOP and, therefore, the ESOP and the fiduciaries met their obligations. Plaintiff's IRA trustee then sold stock to MPC and received MPC's promissory note. The ESOP trustees were neither involved in the issuance of the note nor in the sales transaction concerning the shares.

**D.    Counts II and III of Plaintiff's Complaint Fail Because The Relief That Plaintiff Seeks Is Not Available Under ERISA.**

In Count II and III of the Complaint, Plaintiff seeks relief that is unavailable under ERISA, namely, the payment to her of money damages for a breach of fiduciary duty. For this reason, these counts should be dismissed.

**1.    Plaintiff's Claims for Relief Under Section 1132(a)(3) Fail.**

ERISA's causes of action, as set out at 29 U.S.C. § 1132(a), and the remedies available under those actions are the exclusive actions and remedies available to the Plaintiff. Pilot Life Insur. Co. v. Dedeaux, 481 U.S. 41, 107 S. Ct. 1549, 1556 (1987); see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 712 (2002) ("Indeed, we have noted that ERISA's 'carefully crafted and detailed enforcement scheme provides 'strong evidence that

14

Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'"(citations omitted) (emphasis original)).

In relevant part, ERISA provides a participant or beneficiary an action "(A) to enjoin any act or practice which violates any provision of this subchapter [i.e., Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter  or the terms of the plan. . . ." 29 U.S.C. § 1132(a)(3) (emphasis added).

The United States Supreme Court has decided what forms of relief are available under 29 U.S.C. § 1132(a)(3).  Great-West Life, 122 S. Ct.at 712.  In Great-West Life, the Court clearly stated that 29 U.S.C. § 1132(a)(3)(B) provides solely  for "equitable relief," namely " 'those categories of relief that were typically available in equity. . . . ' "  Id. at  712. Where, as here, the plaintiff is seeking to compel the defendants to pay money as compensation for loss resulting from a breach of legal duty, i.e., defaulting on a note, that is an action for legal, and not equitable, relief and is, therefore, not available under 29 U.S.C. § 1132(a)(3). Id. at 713.

The Supreme Court has additionally ruled that only equitable restitution, and not legal restitution, is available as a remedy under 29 U.S.C. §1132(a)(3).  Equitable restitution can only occur where a defendant is holding separate and identifiable property of the claimant. Id.  at 714-15  ("Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.")  Recoveries under the theory of legal restitution, i.e., the imposition of a personal liability for money, are simply unavailable under ERISA. Id. at 717 ("Respecting Congress's choice to limit the relief available under § 502(a)(3) to "equitable relief" requires us to recognize the difference between the legal and equitable forms of restitution.  Because

15

petitioners seek only the former, their suit is not authorized by § 502(a)(3)." (internal footnote omitted)).

Nor can the Plaintiff seek to characterize her action as one for an injunction under 29 U.S.C. § 1132(a)(3)(A) to compel payment of money; suits for an injunction to compel the payment of money owed is a legal remedy. Id. at 713.

In Great-West Life, the Court also recognized that a claimant might be left without a remedy under ERISA. Id. at 718. The Court specifically discussed the types of remedies, such as constructive trust, that were "equitable" and therefore available under 29 U.S.C. § 1132(a)(3)(B). Id. Since the Great-West Life decision, courts in this jurisdiction have followed the law that 29 U.S.C. § 1132(a)(3) does not permit the recovery of money damages. Barrs v. Lockheed Martin Corp, 287 F.3d 202, 206 (1st Cir. 2002) (noting that the Supreme Court has interpreted the phrase "otherwise appropriate equitable relief" as limiting the forms of relief to those traditionally viewed as 'equitable' such as mandamus or injunctions and as excluding money damages); Sampson v. Rubin, 2002 U.S. Dist. LEXIS 20877, at *14 (D. Mass. 2002) (concluding that plaintiff may not use the equitable enforcement mechanism of 1132(a)(3) to secure compensatory relief for an alleged breach of fiduciary duty).  Additionally, extra-contractual and compensatory damages are not available under 29 U.S.C. § 1132(a)(3). Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825 (1st Cir. 1987) cert. denied, 488 U.S. 909, 109 S. Ct. 261 (1988) (concluding that "it appears that Congress used the word 'equitable' [in §1132(a)(3)] to mean what it usually means - injunctive or declaratory relief."(citations omitted)).

In Count III, Plaintiff seeks the imposition of a constructive trust in her favor "on any money inappropriately obtained by any of the Defendants in, or arising from, a breach of their fiduciary duties," and an injunction to prevent "Defendants from withholding payment to

[Plaintiff] of all principal and interest payments due under the Note and in accordance with the ESOP." Complaint, ¶ 66. Plaintiff is clearly seeking payment of money owed to her under the promissory notes -- legal remedies in the form of money damages which are unavailable under 29 U.S.C. § 1132(a)(3). Further, to the extent that she seeks "equitable" relief, equitable restitution is not available here because the individual Defendants are not holding any separate and identifiable property of Plaintiff nor, under the allegations of the complaint, have the individual Defendants received any gain to the detriment of the ESOP that can form the subject of a constructive trust or is subject to disgorgement.

Because money damages are the actual remedy sought under Counts III and because the equitable relief sought is unavailable, relief cannot be granted thereon and Count III should be dismissed.

### 2.    Plaintiff's Claims for Relief Under Section 1109 and Section 1132(a)(2) Fail.

In Count II, Plaintiff also seeks to recover monetary damages for herself and also reimbursement to the ESOP for Defendants' alleged breach of duties in violation of 29 U.S.C. § 1109 and 1132(a)(2). Complaint, ¶¶ 61, 62. Section 1132(a)(2) provides for a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title." Section 1109 provides that a fiduciary who breaches a fiduciary duty under ERISA

> shall be personally liable **to make good to such plan** any losses to the plan resulting from each such breach, and **to restore to such plan** any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . .
>
> 29 U.S.C. § 1109 (emphasis added).

The U. S. Supreme Court has held that a participant has no right of action for individual recovery under 29 U.S.C. §§ 1132(a)(2) and § 1109, and cannot recover extracontractual or

compensatory damages under those sections. <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134, 105 S. Ct. 3085, 3090, 3092 (1985), <u>rev'g</u>, 722 F.2d 482 (9th Cir. 1983); <u>Drinkwater v. Metropolitan Life Ins. Co.</u>, 846 F.2d 821, 825 (1st Cir. 1987) (citing <u>Massachusetts Mutual Life</u>, 473 U.S. at 134)). "In <u>Russell</u>, the [Supreme] Court concluded that Congress had created liability for breach of fiduciary duty *only in favor of the plan*, and not in favor of individual beneficiaries. . . . the Court declined to imply a private remedy in favor of plan beneficiaries." <u>Drinkwater</u>, 846 F.2d at 825 (emphasis added).

Plaintiff cannot show any loss to the ESOP arising from MPC's default on the notes. The ESOP is not the obligee on the notes, and neither are any of its assets nor is its financial situation affected in any way by the actions of which Plaintiff complains. Any loss here is a personal loss of Plaintiff for which she seeks a recovery solely for her own account. Plaintiff, therefore, fails to state a claim for recovery under 29 U.S.C. §§ 1109 and 1132(a)(2), and Count II of the Complaint should be dismissed.

**E.    Count II of Plaintiff's Complaint Also Fails Because Plaintiff Has Not Shown Significant Reliance On The Summary Plan Description.**

Plaintiff's claim under Count II of her Complaint that she relied on misleading information in the summary plan description ("SPD") also should be dismissed because Plaintiff cannot show both significant reliance on the SPD and prejudice flowing from that reliance.

Plaintiff alleges that all Defendants in this matter violated their duties under ERISA by "preparing and distributing. . . . materially misleading information concerning the ESOP, including a SPD which failed to mention the requirement that adequate security be provided, per the express terms of the ESOP." Complaint, ¶ 58. Plaintiff then claims that she relied to her detriment upon "the misleading and incomplete SPDs in accepting" the promissory notes. Complaint, ¶ 59.

The First Circuit recently explained that "technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud." Watson v. Deaconess Waltham Hospital, 298 F.3d 102, 113 (1st Cir. 2002) (citations omitted). The First Circuit also concluded that for a plaintiff to recover on a theory that the SPD was deficient, the plaintiff must show significant reliance or even the possibility of prejudice flowing from the SPD. Govoni v. Bricklayers, Masons & Plasterers Int'l Union of Am., 732 F.2d 250, 252 (1st Cir. 1984) (holding no significant reliance or prejudice where summary plan description was found inaccurate); Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 56 (1st Cir. 2001) (holding no significant reliance on plan summary).

In a case similar to this one, employees brought a class action against their employer and the fiduciaries of an ESOP. Bachelder v. Communications Satellite Corp., 837 F.2d 519 (1st Cir. 1988). The employees alleged that the summary plan description that they received was misleading and supported their claim that they had not received the full amount of their distributions to which they were entitled. Id. The First Circuit held that there was no indication of any reasonable or significant reliance on the employees' part on the summary plan description. Id. The Court concluded that the employees chose a cash distribution method instead of stock method for reasons unrelated to the summary plan description. Id.

Here, like in Bachelder, Plaintiff cannot show significant reliance on the SPD or prejudice flowing from that reliance. With respect to the shares held for her in the ESOP, Plaintiff had the following options other than putting their shares to MPC: (i) upon distribution, to have held onto the shares distributed; (ii) upon distribution, to have tried to find another willing buyer; or (iii) simply to have left the shares in the ESOP trust. Plaintiff's problems stem from the choice that she made and MPC's default on its notes. MPC's actions and situation are

19

beyond the control of the ESOP fiduciaries. Thus, Plaintiff's position is unrelated to any statement in the SPD and, therefore, under First Circuit precedent, the defects in the SPD that she alleges afford her no basis for any relief. Moreover, Fidelity, the trustee of Plaintiff's IRA, is the entity that actually entered into the sale transaction on Plaintiff's behalf. However, there is no allegation that Fidelity relied on the SPD in question, or even that Fidelity, a large institutional trustee in the retirement plan and IRA business, raised a concern with respect to a deficiency of security in the note issuance.

## III.    **CONCLUSION**

For all the foregoing reasons, Defendants Stetson, Griffin, Moriarty and Leahy respectfully request that this Court dismiss Plaintiff's claims against her in Plaintiff's Complaint.


Respectfully submitted,

GERARD GRIFFIN,                                    JAMES MORIARTY,

By his attorneys,                                   By his attorneys,

*Robert P. Morris (RJP)*                            *Richard W. Paterniti*

Robert P. Joy (BBO# 254820 )                        Joan Ackerstein, (BBO# 348220)
Robert P. Morris (BBO# 546052)                      Richard W. Paterniti (BBO# 645170)
MORGAN, BROWN & JOY                                 JACKSON LEWIS LLP
One Boston Place                                    75 Park Plaza
Boston, MA  02108                                   Boston, Massachusetts 02116
(617) 523-6666                                      (617) 367-0025
Dated: January 30 , 2004                            Dated:  January 30 , 2004

BREWSTER STETSON and
JOHN T. LEAHY,

By their attorneys,

*Christine M. O'Connor (RWS)*

Michael T. Gass (BBO#546874)
Christine M. O'Connor (BBO#647535)
PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA  02199
(617) 239-0100
Dated:   January _30_, 2004

## CERTIFICATE OF SERVICE

This is to certify that on January _30_, 2004, a copy of the foregoing document was served upon Plaintiff's Attorney, Michael Cetrone, Nutter McClennen & Fish, LLP, 155 Seaport Boulevard, Boston, MA 02210; Robert Morris, Morgan, Brown & Joy, One Boston Place, Boston, MA 02108; and Michael T. Gass and Christine M. O'Connor, Palmer and Dodge, LLP, 111 Huntington Avenue, Boston, MA 02108 (617) 239-0100, by first class mail, postage prepaid.

*Richard W. Paterniti*

Jackson Lewis LLP