UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY LOGAN,            )<br>                              )<br>        Plaintiff,      )<br>                              )<br>v.                            )<br>                              )<br>MERRIMAC PAPER CO., INC.  )<br>LEVERAGED EMPLOYEES' STOCK )<br>OWNERSHIP PLAN AND TRUST, )<br>MERRIMAC PAPER CO., INC., AND )<br>GERARD J. GRIFFIN, JR., BREWSTER )<br>STETSON, JAMES MORIARTY AND )<br>JOHN T. LEAHY, as they are or were )<br>Administrators and/or Trustees of the )<br>Merrimac Paper Co., Inc. Leveraged )<br>Employee Stock Ownership Plan, )<br>                              )<br>        Defendants.    ) | CIVIL ACTION NO. 03-CV-12351-RGS |

### OPPOSITION OF PLAINTIFF MARY LOGAN
### TO MOTION OF DEFENDANTS BREWSTER STETSON,
### JAMES MORIARTY, GERARD GRIFFIN AND JOHN LEAHY
### TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff, Mary Logan (hereinafter "Logan"), hereby submits her Opposition to the Motion of Defendants Brewster Stetson, James Moriarty, Gerard Griffin, and John Leahy to Dismiss Plaintiff's Complaint.[1]

In her Complaint, Logan seeks relief based on Defendants' violation of the terms of the Merrimac Paper Company, Inc. Leveraged Employee Stock Ownership Plan and Trust (the "ESOP") and their obligations under the Employee Retirement Income Security Act of 1974,

---

[1] Defendants move jointly to dismiss Logan's Complaint as to the claims asserted against them in Counts I-III; Defendant Griffin alone moves to dismiss the Complaint as to claims asserted in Count IV.

as amended, 29 U.S.C. §1001, et seq. ("ERISA") including, *inter alia*, violations that have thus far deprived Plaintiff of vested benefits to which she is entitled under the ESOP.

Defendants' Assertions

Defendants assert the following arguments to support their Motion to Dismiss the Complaint as to the claims asserted against them in Counts I-III:

1. Logan does not have standing to bring her claims under ERISA;

2. Logan does not allege sufficient facts to state a claim against Defendant Moriarty;

3. Logan fails to state a claim or have any form of relief available to her under 29 U.S.C. §1132(a)(1)(B), §1109, §1132(a)(2), and §1132(a)(3) of ERISA; and

4. Defendants did not breach their fiduciary duty to Plaintiff.

Defendant Griffin moves to dismiss Count IV of the Complaint in a separate Motion and Supporting Memorandum[2] to which Plaintiff seeks leave to respond separately.

I. LOGAN DOES HAVE STANDING TO BRING HER CLAIMS UNDER ERISA

Defendants claim that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction because Logan lacks standing to assert claims under ERISA. The crux of Defendants' position is that Plaintiff is not a "participant" of the ESOP and therefore lacks standing to bring her case under ERISA.

Plaintiff has standing to sue under ERISA Section 502(a). Title 29 of the United States Code, Section 1132(a) states in pertinent part:

---

[2] Defendant Griffin asserts the following grounds:
1. Logan lacks standing to bring her claims against Defendant Griffin under 29 U.S.C. §1132(c)(1)(B); and
2. Logan fails to state a claim upon which relief may be granted.

>A civil action may be brought –
>
>(1) by a participant or beneficiary –
>
>(A) for the relief provided for in subsection (c) of this section, or
>
>(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan . . .

The Supreme Court has defined "participant" to mean, inter alia, former employees ". . . who have a 'colorable claim' to vested benefits, Kuntz v. Reese, 785 F.2d 1410, 1411 (CA9) (per curiam), cert. denied, 479 U.S. 916 (1986)." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989).

Defendants' argument is simplistically straightforward, and its automaton-like application fails to recognize the essential purpose of ERISA, as the case law has clearly articulated. Defendants' attempt to sever Plaintiff off from the ESOP and its fiduciaries by wrongly claiming that Plaintiff has received all of the vested benefits due her under the ESOP. Further, Defendants attempt to shelter themselves behind the Promissory Note, executed by one of the Defendant fiduciaries, Mr. Gerard J. Griffin, as President, on behalf of Merrimac Paper Company, Inc. ("MPC"), wherein MPC undertakes to make installment payments for Logan's benefit into her individual retirement account ("IRA"). Defendants erroneously state that MPC's failure to make such payments is the "real" basis for Plaintiff's claim, and that they have become insulated by MPC's obligation stated within the Promissory Note. These characterizations miss the essence of Plaintiff's claim which the case law has clearly recognized.

As stated in <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697, 701-02 (1994) (quoting <u>Astor v. IBM</u>, 7 F. 3d 533, 538-39 (6th Cir. 1993)),

> ". . . (the) ultimate question of standing is whether plaintiff is within the zone of interests, ERISA was intended to protect . . ."

Courts have recognized that a plaintiff is within such zone, where it can be shown:

> ". . . 'that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on his benefits.'" <u>Laurenzano</u>, <u>Id</u>. at 194, quoting <u>Crawford v. Lamuntia</u>, 34 F.3d 28, 33 (1st Cir. 1994).

In the present case, one of the questions raised by Plaintiff's Complaint is whether Defendants' conduct, breaching their fiduciary duties, directly and inevitably had an effect on Plaintiff's benefits.

Under all of the circumstances, as alleged in the Complaint, Defendants failed to act for the exclusive benefit of the Plaintiff as an ESOP participant and failed to take appropriate action at the time Plaintiff exercised her put on December 22, 2000 to have the ESOP or MPC pay the full amount due to Plaintiff for her shares. As of the end of December, 2000, Logan's interest in her individual account balance under the ESOP was fully vested, and the value of Shares credited to her individual account under the ESOP was $630,874.20. See Complaint ¶¶ 27-30. On December 22, 2000, Logan elected to rollover her account balance into an IRA and exercised her ". . . rights (the 'Put') to require the [Defendant ESOP Sponsor] or the ESOP to repurchase . . . (her) shares . . ." Id. at ¶¶ 31-33. On December 29, 2000, the individual Defendants, including Griffin, chose to obligate the Defendant ESOP Sponsor, i.e. MPC, to pay for Logan's shares, in the amount of $629,500, plus interest, scheduled in five annual payments. Id. ¶¶ 34-36. Defendants' decision ignored or chose not to take account of

the fact that MPC's long-term financial viability was dismal and that MPC would not be able to make the payments. Id. ¶ 39. The Defendants failed to secure the payments and to generally act for the benefit of Logan. Id. ¶¶ 40-41. As a direct result of Defendants' decisions, and failures to act, Logan received none of the payments due her. Id. at ¶¶ 42, 45, 49.

Based on the specific facts alleged, there can be no doubt that Logan is within the zone of interests ERISA was intended to protect. Applying Laurenzano to the present case, Plaintiff is explicit in her allegations that Defendants failed to protect Logan's interests in the Plan. Knowing of, or failing to take account of, MPC's highly troubled financial prospects, the Defendants acted to obligate MPC to pay for Logan's shares over a period of five years. The Defendants could have had MPC pay all of the vested benefits due Logan in cash immediately. The ESOP had the option to assume the rights and obligations of the employer under the put at the time the put was exercised. 29 CFR 2550.408b-3(h)(3). As such, the Defendants could have had the ESOP pay all of the vested benefits due Logan in cash immediately or in installments over time.

Alternatively, the Defendants could have notified Logan of her right to forgo the put option altogether and seek an independent third party to whom her shares could be sold. Such a move would necessarily have created a risk that ownership of MPC, and the accompanying rights of shareholders, would be diluted beyond existing investors and employees. By failing to notify the Plaintiff of this option, the Defendants effectively denied her a material right and benefit granted to her under the ESOP and, in doing so, provided a significant benefit to MPC. Indeed, the Defendants' conduct on this point amounts to nothing less than the use of plan assets, i.e., Logan's accrued benefit, for the benefit of a party-in-interest to the ESOP, viz, MPC, in direct violation of the prohibited transaction rules set forth in Section 406 of ERISA.

Case law further indicates that Logan is in that interest-zone which ERISA protects. In Kuper v. Quantum Chemical Corp., 829 F. Supp. 918 (S.D. Ohio 1993), plaintiffs were former employees whose ESOP shares had been distributed to them from the relevant plan. Plaintiffs' ERISA claims were based upon significant diminution in value of the employer's stock over an 18-month period when such stock was held in employer-sponsored plans. Defendants moved for summary judgment based in part on the grounds "that Plaintiffs as former employees whose ESOP shares have been distributed or transferred from the relevant plan are non-participants in the plan and therefore lack standing to maintain an action for damages under ERISA." Id. at 919.

The Kuper Court referenced the case of Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345 (5th Cir. 1989), wherein the Court held that plaintiffs were "participants" for purposes of ERISA under the following reasoning:

> ". . . because the lump sum distribution to the Sommers plaintiffs allegedly represented less than the full value of their vested benefits at that time, the plaintiffs retained a claim 'for an ascertainable amount' constituting 'vesting benefits' . . ." Kuper Id. at 922 quoting Sommers Drug Stores Co. Employee Profit Sharing Trust, at 350.

Further, the Kuper Court noted the Ninth Circuit's decision in Amalgamated Clothing & Textile Workers v. Murdock, 861 F.2d 1406 (9th Cir. 1988) wherein plaintiffs were allowed to pursue an ERISA claim, although they had received all of their vested plan benefits in a lump sum distribution at the time the plan fiduciaries terminated the plan. The Amalgamated Court ruled that:

> "for the limited purpose of granting plan participants and beneficiaries standing to sue in cases such as this one, ill-gotten profits . . . may be construed as equitably vested benefits under an ERISA plan. Even after plan participants and beneficiaries

> have received their actuarially vested benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing the equitably vested benefits."

Id., 861 F.2d at 1419. The Court therefore concluded that the plaintiffs in <u>Amalgamated</u> did have standing to bring an ERISA action. <u>Kuper</u>, <u>Id</u>. at 922.

The <u>Kuper</u> Court then stated:

> "Even where claimants have accepted lump sum distributions of their vested benefits, such distributions are not dispositive of their status as plan 'participants.' The question of their standing to pursue an ERISA action still requires a fact-intensive inquiry into the existence of a 'reasonable expectation of returning to covered employment' or 'a colorable claim to vested benefits'. <u>Kuper</u> <u>Id</u>. at 923, quoting <u>Firestone</u>, 489 U.S. at 117.

Based on the foregoing discussion and particularly noting <u>Sommers</u>, <u>supra</u>, the <u>Kuper</u> Court concluded:

> ". . . given that the very basis of Plaintiffs' complaint is that the distribution of their ESOP shares did not represent 'everything due them under the plan' when their participation terminated . . . Plaintiffs' claim does appear to be more factually analogous to the claim allowed in <u>Sommers</u>, supra . . . Accordingly, the Court finds that, despite their receipt of all of their ESOP shares from Quantum's benefit plan, Plaintiffs herein do retain at least a 'colorable' claim to a 'benefit' of some type under the plan." <u>Id</u>. at 923.

Accordingly, the <u>Kuper</u> Court recognized Plaintiffs' standing to present their ERISA claims.

As the defendants asserted in <u>Kuper</u>, so too in the present case, the defendants argue that Logan has received a complete distribution of her vested account balances under the ESOP, Plaintiff is not a participant within the meaning of 29 U.S.C. 1132(a) and therefore lacks standing to pursue her claim. However, Logan, like the plaintiffs in <u>Kuper</u>, claims that she has not received "everything due . . . (her) under the plan", and that therefore "the plan

-7-

should be continuing to exist for the purposes of distributing the equitably vested benefits." Kuper, infra, at 922. According to Kuper, then, Logan does have standing to present her ERISA claim.

In Olson v. Chem-Trend Inc., 1995 U.S. Dist. LEXIS 11016 (E.D. Mich. 1995), the Court determined that plaintiff had standing to pursue his ERISA claims. Three weeks after his separation from employment plaintiff requested of and received from defendant employer his ESOP shares, which plaintiff promptly redeemed. Six years after he redeemed his stock, plaintiff brought suit alleging that in the course of distributing his benefits and redeeming the stock defendant breached its fiduciary duty to him by causing him to give up rights to benefits still due to him. The Court found that although by redeeming his shares plaintiff "terminated his right to belong" to the plan, "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach.'" Olson, Id. at *11, quoting Swinney v. General Motors Corp., 46 F.3d 512, 518 (1995).

Applying the Olson reasoning to the present case, Defendants' breach of fiduciary duty in not having the ESOP or MPC make immediate payment for Logan's shares caused Plaintiff to give up her right to benefits, i.e., not receiving any value with respect to the shares allocated to her under the ESOP. As such, Logan retains a "colorable claim to vested benefits", and has standing to pursue her ERISA claims.

Other cases which support the rule that a former employee with a "colorable claim" that he or she will prevail in a suit for benefits, is a "participant" for purposes of ERISA Section 502(a) include: Davis v. Featherstone, 97 F.3d 734 (4th Cir. 1996) (a former employee recipient of a lump sum distribution from a pension plan has a colorable claim in a

suit for increased benefits); Smith v. Sydnor, 2000 WL 33687953 (E.D. Va. 2000) (former employee recipients of lump sum distributions from ESOP-turned-profit-sharing plan may maintain action); and Werner v. Morgan Equipment, 15 EBC 2295 (N.D. Cal. 1992) (former ESOP participants having already received total amount to which plan believed them to be entitled had standing to challenge sufficiency of distribution).

The 1994 decision by the U.S. District Court of the Northern District of California in Flynn v. Ballinger, 1994 U.S. Dist. LEXIS 19689 (N.D.Cal. 1994), aff'd w/o opinion, 76 F.3d 386 (9th Cir. 1996) does not compel a contrary result. The Flynn ruling is based on two findings: first, that the plaintiffs were entitled to receive from their ESOP only the company stock credited to their ESOP accounts along with corresponding put options that were not binding on the ESOP; and second, that "absent from this case" are any alleged violations by the defendants of their fiduciary duties. In stark contrast to Flynn, the ESOP in this case granted participants more than the mere right to stock and put rights, it granted them the right to sell shares of MPC stock to the ESOP. Indeed, Section 10.04 of the ESOP is captioned: "Participant's Right To Sell Shares of Company Stock to the [ESOP] Trust and/or to the Company." See Complaint, Exhibit A, Merrimac Paper Company, Inc. Leveraged Employee Stock Ownership Plan And Trust, p. 27.

The terms of the put executed by Plaintiff – a document drafted by or on behalf of the Defendants – states that "under Section 10.04 of the ESOP I [the ESOP participant] have the right (the "Put") to require the Company *or the ESOP* to repurchase [my] shares [in the ESOP]." (emphasis added). It goes on to state that "I understand that in accordance with Section 10.04(a) of the ESOP, the Company *or the ESOP's Trust will*, at their election, pay me in a lump sum or in five or less equal annual installments for those shares at a closing within

thirty (30) days of the date of the Company's receipt of this notice." (emphasis added). See Complaint, ¶ 33. In short, unlike the plaintiffs in the Flynn, the Plaintiff here was entitled to more than simply a distribution of stock; the Plaintiff had, *inter alia*, the right to sell that stock to the ESOP.

Moreover, Section 10.04 of the ESOP dictated the terms under which MPC could purchase these shares, including the requirement that any promissory note issued by MPC in connection with such a purchase must be adequately secured. See Complaint, ¶ 33, and Exhibit A, pp. 27-28. The Defendants in this case, jointly or severally, knew or should have known that the promissory note issued unilaterally to Plaintiff was bereft of any security. As such, the Defendants' election not to purchase the Plaintiff's shares in this case and their failure to administer the ESOP in accordance with Section 10.04 constitute precisely the type of fiduciary violations that were absent from the case in Flynn. The presence of these violations in this case renders Flynn inapposite.

Defendants' arguments to the contrary and attempt to bifurcate the distribution here into two separate transactions consisting of a completed distribution in kind from the ESOP and an unrelated put to MPC is too clever by half and cannot withstand scrutiny. Were the Court to accept the Defendants' position, then fiduciaries of ESOPs maintained by private companies would effectively be absolved of any obligation to distribute benefits of any value. Indeed, they could insulate themselves from any liability simply by distributing stock and causing the participants to put that stock to purchasers in exchange for worthless promissory notes.

Accordingly, Plaintiff has standing to assert claims under ERISA, and Defendants' first reason to dismiss the Complaint fails.

II. **LOGAN'S COMPLAINT DOES STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS UNDER ERISA**

A. <u>Plaintiff's Complaint Does Allege Sufficient Facts to Support Her Allegations</u>

The Federal Rules have adopted "'simplified pleading.'" Wright & Miller, Federal Practice and Procedure: Civil 2d § 1202.

> "The only function left to be performed by the pleadings alone is that of notice. Thus, pleadings under the rules simply may be a general summary of the party's position that is sufficient to advise the other party of the event being sued upon, to provide some guidance as to what was decided for purposes of res judicata, and to indicate whether the case should be tried to the court or to a jury. No more is demanded of the pleadings than this . . ." <u>Id</u>.

Plaintiff's Complaint And Jury Demand go beyond the requirements of simplified pleadings, and in thirteen (13) pages, containing seventy-two (72) allegations set forth clearly what the claims are and on what they are based.

Plaintiff's Complaint clearly states claims upon which relief can be granted.

> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357.

Logan's factual allegations set forth valid causes of action.

Defendants' argument fails both in misconstruing the law and in ignoring the bulk of Plaintiff's Complaint. The cases referenced by Defendants support Plaintiff's position. In <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989), the Court stated:

> It is only if the complaint, so viewed, presents no set of facts justifying recovery that we may affirm the dismissal.

In the Dartmouth Review case brought under 42 U.S.C.S. § 1981 and 42 U.S.C. §2000d, the Court recognized that the need for sufficient factual allegations ". . . is perhaps greater where allegations of civil rights violations lie at the suit's core." Id. at 16. In the final analysis, the Dartmouth Review plaintiffs made ". . . no specific allegation which, alone or in combination with other well-pled facts, is capable of supporting an inference that any defendant possessed an anti-white racial animus." Id.

Applying Dartmouth Review to the present case, Plaintiff clearly states allegations susceptible to objective verification supporting her underlying claims. As stated in Dewey v. University of New Hampshire, 694 F.2d 1, 8 (1st Cir. 1982), another civil rights action, the claim should set forth at least minimal facts ". . . as to who did what to whom and why." In her Complaint Logan clearly sets forth specific allegations as to how Defendants breached their fiduciary duties to Plaintiff causing her to suffer the damages of not receiving the ESOP benefits due her. See Complaint, ¶¶ 31 to 49, (all of which Paragraphs Defendants totally ignore in making their argument) together with the various allegations under each Count, applying the relevant law to the facts pleaded.

Therefore, as a matter of law, Plaintiff has alleged sufficient facts to establish a violation of law.

    B.    Plaintiff's Complaint Does State A Claim Against The Individual Defendants As She Did Allege Sufficient Facts To Establish A Breach Of Duty Owed To Plaintiff

A fundamental obligation imposed on fiduciaries by ERISA as set forth in 29 U.S.C. §1104, states as follows:

§1104. Fiduciary duties.

(a)(1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of our enterprise of a like character and with like aims;

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

As stated in Eaves v. Penn, 587 F.2d 453, 457 (10th Cir. 1978), such ". . . provisions embody a carefully tailored law of trusts, including the familiar requirements of individual loyalty to beneficiaries . . . and the requirement that fiduciaries comply with the provisions of plan documents to the extent that they are not inconsistent with the Act." Clearly then, the Defendants' duty under ERISA to the Plaintiff is akin to a trustee's fiduciary duty to the beneficiary of a trust.

As discussed extensively in Part (1) supra, the Defendants failed to act for the exclusive benefit of the Plaintiff as an ESOP participant, not undertaking appropriate action at the time Plaintiff exercised her put on December 22, 2000 to have the ESOP or MPC pay the full amount due to Plaintiff for her shares. Defendants failed to secure the payments. See Part (1) pp. 4 - 5. As a result of these breaches of fiduciary duty Plaintiff has suffered the loss of all of the value of her retirement assets.

Thus, Plaintiff's Complaint certainly states claims against the individual defendants, as Plaintiff has alleged sufficient facts to establish a breach of duty owed to her.

    C.    Count I of Plaintiff's Complaint Does State A Cognizable Claim Under §1132(a)(1)(B)

As set forth in Part I, supra, cases such as Kuper and Olson make clear that where Defendants' conduct caused Plaintiff not to receive the value of her ESOP benefits, a cognizable cause of action is made out.

In arguing that the trustees' duties do not extend to the disposition of distributions which are assets that have left the ESOP and its trust and are no longer subject to ERISA protections, defendants' reliance on Robbins v. DeBuono, 218 F.3d 197, 203-204 (2nd Cir. 2000) cert. denied, 531 U.S. 1071, 1215 S. Ct. 760 (2001) is misplaced. Robbins involved a suit by a Medicaid claimant and his wife against defendants' state health and social services departments for allocating the claimant's pension benefits to the wife. In essence, the Court did not find a violation of ERISA by a creditor reaching pension benefits once they left the hands of the pension administrator. In stark contrast, the present case is a lawsuit, not against some third-party creditors, but against the ESOP's trustees for breach of fiduciary duty in causing plaintiff to be damaged in not receiving the benefit of her ESOP interests.

Therefore, Plaintiff's Complaint clearly states a cognizable claim under §1132(a)(1)(B).

    D.    The Relief Sought By Plaintiff in Counts II and III is Available under ERISA.

Defendants' argument that Plaintiff seeks, in Counts II and III, relief that is not available under ERISA is, in a word, "wrong." Section 502(a)(2) of ERISA, 29 U.S.C. §1132(a)(2) authorizes civil actions by plan participants "for appropriate relief under section 409 [of ERISA]." Section 409(a) of ERISA, 29 U.S.C. §1109(a) provides that:

> "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title [viz, Title I of ERISA, which includes the fiduciary responsibility rules set forth in Part 4 of Subtitle B of Title I] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . ."

In Chao v. Hall Holding Co., 285 F.3d 415 (6th Cir. 2002), cert. denied, 537 U.S. 1168 (2003), the Sixth Circuit ruled that a district court did not abuse its discretion by distributing cash to ESOP participants in employee stock ownership plan as a remedy under ERISA for breach of fiduciary duty on the part of the ESOP administrators in making valuation of employer stock in connection with establishment of plan, which resulted in ESOP overpaying for stock by over $1 million.

In Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court held that employee benefit plan beneficiaries were authorized by the remedial provisions of ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), to bring suit for individual relief based upon a claim that a plan fiduciary had breached its ERISA fiduciary duties by misrepresenting to employees that their benefits would remain secure if they transferred to the employer's newly established entity.

Defendants' reliance upon the Supreme Court's recent decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002) is misplaced. In Great-West, the Supreme Court held that Section 1132(a)(3) relief is available only in cases that follow the historical model for cases brought at equity. It stated that "almost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty," id. at 713, and that suits for restitution were ordinarily only available "where

money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. at 714.

In Watson v. Deaconess Waltham Hospital, 298 F.3d 102, 110 (1st Cir. 2002), the First Circuit recognized that it "is not yet clear how the line of precedent from our sister circuits indicating that restitution and reinstatement are equitable remedies under § 1132(a)(3), see, e.g., Griggs v. E.I. Dupont De Nemours & Co., 237 F.3d 371, 384 (4th Cir. 2001); Bowerman v. Wal-Mart Stores, Inc. 226 F.3d 574, 592 (7th Cir. 2000) will be affected by Great-West." And the Court noted that, in the aftermath of the Great-West decision, the Eighth Circuit ruled that restoration of benefits remains an available remedy under ERISA. Id. (citing Ross v. Rail Car Am. Group Disability Income Plan, 285 F. 3d 735, 740 (8th Cir. 2002)) (and comparing Kishter v. Principal Life Ins. Co., 186 F.Supp.2d 438, 445 (S.D.N.Y. 2002) ("beneficiary's claim for insurance money she claimed she would have received if not for fiduciary's breach of duty was foreclosed by Great-West")).

Assuming, *arguendo*, that the relief sought under counts II and III of the Complaint is not available under ERISA, which is clearly not the case, as long as Logan is entitled to some type of relief under the ERISA, pleading of an unavailable remedy or failure to specify a particular kind of equitable relief to which the plaintiff claims entitlement will not result in dismissal. In re: Enron Corporation Securities, 2003 WL 22245394 (S.D. Tex. Sept. 30, 2003); Heimann v. Nat'l Elevator Industry Pension Fund, 187 F.3d 493, 511 (5th Cir.1999) (holding that the plaintiffs' suit should not be dismissed even though they failed to specify that they were seeking equitable relief) *citing* Doss v. South Central Bell Tel. Co., 834 F.2d 421, 423 n. 3 (5th Cir.1987)("The court stated that it dismissed those claims because the plaintiff had requested legal relief rather than the equitable relief authorized by Title VII. However,

demand of an improper remedy is not fatal to a party's pleading if the statement of the claim is otherwise sufficient to show entitlement to a different form of relief."). <u>See also</u> Fed.R.Civ.P. 54(c)("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.").

    E.    <u>Plaintiff Has Stated A Cause Of Action Cognizable Under ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109 and 1132(a) Arising Out Of the Material and Misleading Information Contained in the ESOP's Summary Plan Description.</u>

The First Circuit has "recognized that a Plan Summary that violates [ERISA, sec. 102, 29 U.S.C. § 1022] will be binding on a plan administrator . . . . if the participant demonstrates significant or reasonable reliance on the Plan Summary." <u>Mauser v. Raytheon Co. Pension Plan for Salaried Employees</u>, 239 F.3d 51, 55 (1st Cir. 2001). Section 102 of ERISA, 29 U.S.C. §1022, provides, in relevant part that:

> (a) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries . . . . The summary plan description shall include the information described in subsection (b), shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. [ ]
>
> (b) The summary plan description shall contain the following information: The plan's requirements respecting eligibility for participation and benefits; . . . circumstances which may result in disqualification, ineligibility, or denial or loss of benefits. . . ."

In Count II of the Complaint, Plaintiff alleges that the Defendants violated their fiduciary duties under ERISA by "[p]reparing and distributing, or causing to be prepared and distributed, materially misleading information concerning the ESOP, including a [summary plan description] which failed to mention the requirement that adequate security be provided, per the express terms of the ESOP. As such, the allegations of Count II relating to the SPD clearly state a claim for relief cognizable under ERISA.

Defendants assert only two arguments in support of their motion to dismiss these allegations: First, that the "deficiencies" of the ESOP's SPD constitute nothing more than "technical violations" of ERISA for which no substantive remedy is available. And, second, that Plaintiff "can not show both significant reliance on the SPD and prejudice flowing from that reliance." Memo, page 18. Both arguments fail.

Plaintiff does not allege in Count II that the Defendants should be held liable for nothing more than a "technical violation of ERISA's notice provisions." To the contrary, Plaintiff alleges that the SPD for which the Defendants must be held accountable failed to meet the substantive requirements of ERISA's reporting and disclosure provisions and that this failure deprived the Plaintiff of crucial information relating to her rights under the Plan that would be material to her decision regarding the terms under which she would seek a distribution of her vested benefit under the Plan. As such, the allegations here easily satisfy the requirements for stating a cause of action based on misleading information in a SPD, as set forth in Watson v. Deaconess Waltham Hospital, 298 F.3d 102 (1st Cir. 2001).

In support of their motion on this point, the Defendants argue that Plaintiff "cannot show significant reliance on the SPD or prejudice flowing from that reliance. With respect to the shares held for [Plaintiff] in the ESOP, Plaintiff had the following options other than putting their [sic] shares to MPC: (i) upon distribution, to have held onto the shares distributed; (ii) upon distribution, to have tried to find another willing buyer; or (iii) simply to have left the shares in the ESOP Trust. Plaintiff's problems stem from the choice that

[Plaintiff] made and MPC's default on its notes. MPC's actions and situation are beyond the control of the ESOP fiduciaries."[3] Memo, Pages 19-20.

Assuming, *arguendo*, that the Defendants have correctly stated the Plaintiff's options, the Defendants concede that one of these "options" consisted of selling the shares to a third-party. For the purposes of this Motion, it must be assumed that, had the Plaintiff known that her ESOP shares, if put to the ESOP or MPC would not be purchased in accordance with the terms of the distribution provisions of the ESOP, *e.g.*, would not be purchased in a transaction involving an adequately secured promissory note, Plaintiff might very well have elected to pursue this "choice" identified by Defendant's in their Memo.

The Defendants' reliance upon Bachelder v. Communications Satellite Corp., 837 F. 2d 519 (1st Cir. 1988) is misplaced. Indeed, application of that decision to this case precludes a motion to dismiss for there the Court considered plaintiffs' argument that "even if the Plan itself does not permit recovery, the Plaintiffs should still recover because the SPD might have led them reasonably to think that the Plan's terms were otherwise. . . . " Id. at 522, but went on to say that the record developed in that case for summary judgment did not show any such reliance. Id. at 522-23. It is clearly premature in this case to render an order upon what the record to be developed here will or will not show.

---

[3] It is noteworthy that (i) the Defendants, in whole or in part, played material roles in the governance of MPC, and (ii) to the extent that it is demonstrated through discovery that MPC was, itself, a fiduciary of the ESOP, then the Defendants may be held liable for MPC's conduct in such capacity under ERISA's co-fiduciary liability provisions. As such, the Defendants' assertion cited in the accompanying text is incorrect both as a matter of fact and law.

III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests that this Court deny Defendants' Motion To Dismiss The Plaintiff's Complaint.

**MARY LOGAN**

By her attorneys,

*/s/ Michael T. Cetrone*
Michael T. Cetrone (BBO #079980)
Robert D. Webb (BBO #555666)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
(617) 439-2000

Dated: March 5, 2004